UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 07-123-P-H |
| | ) | |
| HOWARD KELLY, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

RECOMMENDED DECISION ON MOTION TO DISMISS

The defendant, Howard Kelly, moves to dismiss the indictment in this action, on the grounds that the government has violated the Speedy Trial Act, 18 U.S.C. §§ 3161-74. An evidentiary hearing was held before me on November 14 and December 4, 2008, at which the defendant appeared with counsel. The defendant testified in his own behalf. He offered 21 exhibits, all but one of which were admitted without objection. The contested exhibit, Defendant's Exhibit 20, was admitted over the government's objection. The government called three witnesses and offered 10 exhibits, all of which were admitted without objection. I recommend that the court make the following findings of fact and deny the motion.

## I. Proposed Findings of Fact

The complaint that initiated this action was filed on May 17, 2006. Docket No. 1. It alleges that the defendant committed bank fraud in violation of 18 U.S.C. § 1028(a)(7) through the use of means of identification of other persons. Criminal Complaint (Docket No. 1) at 1. An arrest warrant was issued that day by this court, Docket No. 2, but apparently has never been served. A writ of habeas corpus *ad prosequendum* as to the defendant was issued by this court on September 29, 2006. Docket No. 5. At that time, the defendant was in federal custody in

New York state in connection with a charge of escape. The defendant appeared in this court on October 23, 2006, at which time Assistant Federal Defender Eric A. Vos was appointed to represent him. Docket No. 10. The court ordered that the defendant be detained. Docket No. 12.

The defendant, who has substantial familiarity with the federal criminal justice system, testified that he was moved from the Western District of New York to the District of Maine in connection with the complaint "against my will." He arrived at the Cumberland County Jail in Portland, Maine on October 20, 2006, a Friday. He met Vos in the courthouse lockup on the following Monday, October 23. He testified that he told Vos at this initial meeting that his rights had been violated when he was brought to Maine without a hearing or written waiver on his part.

The defendant testified that he also told Vos that Vos worked for him and that his plan of defense was to invoke his Speedy Trial rights and to resolve the Maine charge as soon as possible. According to the defendant, when he reminded Vos during his initial appearance to speak to the magistrate judge about the defendant's "Sixth Amendment[1] speedy trial rights," Vos "shushed" the defendant and did not follow his instructions. The defendant then testified that he had not heard from Vos "for months" after October 23, 2006, until Vos came to the jail to see him in December 2006 or January 2007. He asserted that he gave Vos explicit instructions not to agree to any continuances or delays in resolution of the Maine charge. On January 19, 2007, the defendant wrote a letter to Vos "expressing [his] discontent" with Vos, admitted as Defendant's Exhibit 12.

Vos, who has been a federal public defender for over 12 years, the past two and a half of them in Maine, agreed that he first met the defendant in the courthouse lockup on October 23,

---

[1] The First Circuit has observed that the Speedy Trial Act "increases a defendant's speedy trial safeguards beyond the constitutional minima." *United States v. Hastings*, 847 F.2d 920, 923 n.4 (1st Cir. 1988).

2006, but his testimony about subsequent events diverges markedly from that of the defendant on almost every material point. Unless otherwise indicated, I find the testimony of Vos to be more credible than that of the defendant where their testimony differs.

Before Vos first met the defendant, he received a telephone call from the attorney who represented the defendant on the New York escape charge, Mr. Crimi. He told Vos that the defendant was coming to Maine and informed Vos about the pending New York charge. Crimi told Vos that he was not the defendant's first attorney on the New York charge and that trust between Vos and the defendant was an issue about which Vos should be concerned.

During their first conversation, the defendant sparked in Vos the idea that the New York and Maine federal charges could be treated together. Vos testified that during this meeting, the defendant told him that he must not be convicted on the escape charge because, if that happened, he would be designated at a higher level for sentencing purposes and "they will send me to a penitentiary and I can't go to a penitentiary . . . . I'm too old for that." Vos thus considered it of paramount importance to dispose of the escape charge.

The telephone system at the Maine federal defender's office allows jail inmates to call collect, but the call will not be accepted if the particular lawyer is not in the office. Vos testified that he did not talk to the defendant on the telephone, but did meet with him several times and sent him several letters, which he identified as Government Exhibits 6, 9, 11, and 14.

When Vos goes to the Cumberland County Jail, where he had between 15 and 30 clients at the time the defendant was there in 2006-07, he sometimes signs in and other times not. He usually sees more than one client per visit, but, since he only has two hours at a time to see clients, he has seen as many as four clients on one trip. Government Exhibit 3 is the Cumberland County Jail visitor log which he signs on those occasions when he does sign in before meeting

with a client. The highlighted entries on the exhibit are in Vos's handwriting. An early entry on the exhibit includes the name of the client Vos was visiting; most of his entries do not include this information. The defendant never told Vos that he was being held in the Cumberland County Jail "against his will." Vos would have remembered being told that. Vos does not keep time sheets that would show the dates on which he visited the defendant.

Vos talked with the defendant several times about how to handle the escape charge. Vos showed the assistant United States attorney in Maine that dismissal of the escape charge would lower the defendant's criminal history by two points but that the same sentence would be possible under the advisory sentencing guidelines. He told the assistant United States attorney that the defendant would plead guilty to the Maine charge if the New York charge was dropped. There was also a New Hampshire matter that might need to be brought into the pleas discussions as well. From the outset the defendant's biggest concern was getting rid of the New York charge. Vos discussed this possibility with Crimi. The prosecutor in Maine thought that this was a good idea. Crimi agreed to try to make the deal work with the prosecutors in New York.

It is possible that Vos discussed the question of waiving the defendant's speedy trial rights with the defendant, although he does not recall such a conversation. Defendant's Exhibit 7 is the first joint motion to exclude time under the Speedy Trial Act in this case. Vos signed this motion, as he felt he had to do, in order to keep alive the possibility of the two-district plea bargain. It is undisputed that this motion was filed four days after the applicable Speedy Trial Act deadline. Defendant's Exhibit 9 is the second joint motion to exclude time in this case. It is undisputed that this motion was also filed four days after the applicable Speedy Trial Act deadline. Vos testified that he agreed to both of these motions with the consent of his client, an understanding that had been reached long before either of the motions was actually filed. Vos

always explains Speedy Trial Act issues to his client when the charging instrument is a complaint, as it was here. Vos remembers stipulating to keeping the defendant in custody in Maine because the pending case in New York put him in custody there.

Eventually the assistant United States attorney in New York refused to drop the escape charge. Vos told the defendant that the only card they had to play was to make the case as difficult as possible for the prosecutors in both districts, if they could not or would not get the New York charge dismissed. The defendant was in Maine on a writ, and the authorities in New York could not be forced to take him back. They eventually came to Maine to get the defendant. The defendant went to trial on the New York charge and was convicted.

The defendant never told Vos that he wanted to be sent back to New York while they were waiting for a response on the plea offer.

Vos's letter dated October 26, 2006, which is Defendant's Exhibit 5, was hand-delivered to the defendant by Vos on October 27, 2006. Government Exhibit 3 shows that Vos signed in at the jail that day. Defendant's Exhibit 6 is a letter from Vos to the defendant dated November 15, 2006; its text suggests to Vos that he had visited the defendant at the jail around November 3, 2006, when Government Exhibit 3 shows that Vos was at the jail. Defendant's Exhibit 11 is a letter from Vos to the defendant dated December 29, 2006. The defendant was being held under special conditions, so he and Vos were limited to the use of one interview room for no more than two hours at a time. Vos had been in a queue for use of this room three times before the December 29 letter without success. He knows that he visited the defendant at the jail at least two times and fewer than 12 times, based on the number of topics they discussed that they would not have discussed at the same time. The possibility that the New York charge would be dismissed was still in play as of the December 29 letter. Vos testified that he would not have

alluded to the 30-day Speedy Trial Act period in the indirect manner in which he did in the December 29 letter, unless he had already discussed it with the defendant.

Vos was adamant that he would not have agreed to exclusions of time under the Speedy Trial Act without talking to the defendant first.

Michael Desrosiers is a United States postal inspector who has worked in Portland, Maine, for 12 years and the case agent for the investigation that led to the Maine charge against the defendant. He testified that he had first identified the defendant when he learned that the defendant had shopped in New Hampshire using different names and when the police chief of Epsom, New Hampshire, appealed to the public for identification of the defendant and his wife, via photographs. The defendant was arrested in New Hampshire and transported to Rochester New York, on the escape charge within two days after his arrest. Desrosiers swore out the Maine complaint, which is Defendant's Exhibit 1. He presented charges against the defendant to the grand jury in the District of Maine in December 2007 in case the defendant was acquitted after trial in January 2008 in New York on the escape charge.

The defendant testified that Vos only came to see him once in the Cumberland County Jail, either in December 2006 or January 2007. He testified that he gave Vos explicit instructions that there be no delays or continuances in connection with the Maine charge and that he had not seen or spoken with Vos before the first request to exclude time was filed. He testified that there was no way for him to initiate communication with Vos. He said that he never authorized Vos to allow him to be held prior to indictment for more than the 30-day period allowed under the applicable provision of the Speedy Trial Act.

The defendant testified that Vos met with him in the Cumberland County Jail for the first time on January 19, 2007, and at that time he told Vos that he was not happy with the delays in

6

his case or the way that Vos was handling his case. He said that he was sent back to New York on February 13, 2007, "without prior notice and against my will." Defendant's Exhibit 15 is a letter from the defendant to Vos dated March 21, 2007, which he mailed from the Buffalo Detention Center.[2] Defendant's Exhibit 16 is the defendant's *pro se* filing in this case "about all of the violations of [his] constitutional rights in this case." He testified that he never signed any waiver of his rights under the Speedy Trial Act and that the law requires that he sign any such waiver personally.

## II. Discussion

### A. Speedy Trial Act

*1. Application of the Speedy Trial Act*

The Speedy Trial Act provides, in relevant part:

> **(b)** Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges. . . .
>
> **(h)** The following periods of delay shall be excluded in computing the time within which an information or indictment must be filed, or in computing the time within which the trial of any such offense must commence:
>> (1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to –
>>> * * *
>>> (G) delay resulting from any proceeding relating to the transfer of a case or the removal of any defendant from another district under the Federal Rules of Criminal Procedure:
>>> (H) delay resulting from transportation of any defendant from another district . . . ;
>>
>> (8)(A) Any period of delay resulting from a continuance granted . . . at the request of the defendant or his counsel or at the

---

[2] The defendant testified with confidence that he left Maine on February 13, 2007 and mailed the March 21, 2007 letter from the Buffalo Detention Center. Shawn Willitts, a supervisor deputy with the United States Marshals Service, testified that the defendant left Maine to be returned to New York on February 22, 2007. I credit Willitts's testimony.

> request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(b) & (h).

Contrary to the defendant's understanding, his personal signature on a request for continuance or other form of waiver under the Speedy Trial Act is not required by the plain language of the Act. The defendant's consent in writing is required only when his or her trial begins less than 30 days from the date of his or her initial appearance, or if the defendant is to be tried before a magistrate judge. 18 U.S.C. § 3161(c)(1) & (2). Neither circumstance is present in this case.

The government contends that, because the New York charge was pending against the defendant during the entire time that he was in Maine, and he was present in Maine only in response to a writ, the Speedy Trial Act time limits never began to run, much less expire. Government's Opposition to Motion to Dismiss ("Opposition") (Docket No. 57) at 3-4. The Act provides that the 30-day period to indict begins to run when the defendant is arrested or served with a summons in connection with the charge at issue, here the Maine complaint. 18 U.S.C. § 3161(b). From all that appears in the record, this defendant was never arrested or served with a summons in connection with the Maine charge.[3] Thus, at least technically, the Act appears not to apply at all.

*2. Exclusion Under the Speedy Trial Act*

If the Speedy Trial Act nonetheless does apply, case law supports the government's position that all of the time the defendant was held in Maine in connection with the New York

---

[3] Counsel for the defendant argued at the hearing that, for purposes of the Speedy Trial Act, "an arrest is the same thing as an initial appearance," citing *United States v. Graef*, 31 F.3d 362 (6th Cir. 1994), *United States v. Blackmon*, 874 F.2d 378 (6th Cir. 1989), and *United States v. Davis*, 785 F.2d 610 (8th Cir. 1986). None of those cases so holds, and none is close enough on its facts to the instant case to provide much guidance for this court.

charge should be excluded under 18 U.S.C. § 3161(h)(1) from the calculation of the 30-day limit. On very similar facts, the Seventh Circuit reached this conclusion in *United States v. Bailey*, 957 F.2d 439 (7th Cir. 1992). In that case, the defendant was arrested on January 5, 1990, in Chicago, and charged with bank robbery. *Id*. at 441. He was then wanted for three recent bank robberies in California. *Id*. He requested that he be transferred to California, representing that while there he would plead guilty to the Illinois charge. *Id*. He was transferred but did not plead guilty. *Id*. The California charges were dismissed without prejudice on July 16. *Id*. A bench warrant was issued in the Northern District of Illinois on June 22, and the defendant was transported to Illinois on or about July 23. *Id*. Trial began in Illinois on August 13. *Id*. Bailey contended that the Illinois charges should have been dismissed under the Speedy Trial Act. *Id*. at 443. The Seventh Circuit concluded that the time the defendant spent in California was excluded under section 3161(h)(1)(D). *Id*. at 443-44.

In the case at hand, the defendant was physically in Maine while he was being held on the New York charge, but, particularly where this time was devoted to an attempt to resolve the New York charge along with the Maine charge, that distinction makes no difference for purposes of the Act. *See United States v. Montoya*, 827 F.2d 143, 151-52 (7th Cir. 1987) (from day of arrest until Illinois indictment handed down, defendant was facing other federal charges in Texas; time spent negotiating plea bargain in Texas excludable from Speedy Trial Act computation in Illinois).[4] This is not a case in which federal prosecutors were cynically moving the defendant between jurisdictions in order to keep him incarcerated when he would otherwise have gone free or to prevent him from going to trial until they gained some tactical advantage. For all that the

---

[4] Counsel for the defendant cited *United States v. Shear*, 825 F.2d 783 (4th Cir. 1987), for the proposition that exclusions under section 3161(h) can only be for actual trial time in another jurisdiction. That opinion does not stand for that proposition. Indeed, the opinion does not indicate how much of the time found to be excludable by the trial court was spent in actual trial, but it is unlikely to have been the entire time at issue, between Septenber 5, 1985 and March 10, 1986. *Id*. at 786.

9

prosecutors in both New York and Maine are shown to have known, the defendant was using that time to try to work out a plea bargain to resolve both charges.

In addition, the fact that the defendant was in Maine in 2006 as a result of the use of a writ of *habeas corpus ad prosequendum* does not invoke the limits of the Act. *United States v. Rodriguez-Franco*, 749 F.2d 1555, 1559 n.2 (11th Cir. 1985) (fact that federal court was able to obtain defendant's appearance three times by use of writ while defendant was otherwise held in state custody does not mandate federal trial within limit set by Act). Accordingly, it is not necessary to reach the defendant's additional arguments, but, for purposes of completeness, I will nonetheless address them briefly.

*3. Defendant's Additional Arguments*

First, the defendant contended at the hearing that he could not agree to a retrospective waiver of the Speedy Trial Act time limits, so the fact that both motions to exclude were filed four days late makes them ineffective. In support of this argument, counsel for the defendant cited *Zedner v. United States*, 547 U.S. 489 (2006), asserting that the Supreme Court's proscription of prospective waivers under the Act in that case must also be applied to retrospective waivers. However, all that the Supreme Court found objectionable in *Zedner* was a court-suggested blanket, prospective waiver "for all time" of the defendant's rights under the Act. 547 U.S. at 492, 496, 501, 503. Indeed, the Supreme Court suggested in *Zedner*, without ruling, that waiver of a completed violation of the Act is in fact allowed. *Id.* at 502. On the showing made, there was no violation of the Act due to the fact that the motions to exclude were filed "late."

I also reject the defendant's argument that, because no exclusions were requested for any time after January 24, 2007, the indictment must be dismissed because he did not leave the

10

District of Maine until February 22, 2007. First, that is a period of only 29 potentially excludable days, and, second and more important, the defendant has made no showing that the prosecutors in the District of Maine had any control over the speed – or lack thereof – with which the Northern District of New York retrieved the defendant, who was being held in Maine in connection with the New York charge.

Counsel for the defendant also contended at the hearing, without citation to authority, that there can be no presumption of waiver of the Act. However, there was no explicit waiver in *Bailey* or *Montoya*. Those courts held that the Act's time limits simply did not begin to run. Any motion to exclude time in those cases would have been, like the motions in this case, unnecessary, but permissible as an exercise of caution.

In addition, it is self-evident that this court, and any court, must be able to rely on the representations of counsel for criminal defendants. If defendants were allowed to repudiate motions filed and/or signed by the attorneys then representing them merely by testifying later that the lawyers acted without their clients' authority, some and perhaps many criminal defendants would do so as soon as it appeared to be in their interest, seriously disrupting the criminal justice system. If Vos did in fact repeatedly ignore what his client, the defendant, directed him to do and make representations to the court directly contradictory to what his client told him to do, or not to do, the system provides a remedy for that through 28 U.S.C. § 2255. When the right at issue is not a fundamental right, but rather one provided by statute, it may be waived by counsel. *Parker v. Duncan*, 2007 WL 2071745 (N.D.N.Y. July 17, 2007), at *14. That is, in effect, what happened here. As the Supreme Court has stated, "[s]cheduling matters are plainly among those for which agreement by counsel generally controls[,]" and waiver of statutory time limits, which amount to "agreement to a specified delay in trial," do not require

express consent from a criminal defendant, and may not be repudiated later by the defendant. *New York v. Hill*, 528 U.S. 110, 115, 118 (2000) (noting that to hold otherwise would allow defendants "to escape justice by willingly accepting treatment inconsistent with the [statute's] time limits, and then recanting later on").

## B. Dismissal Without Prejudice

In the event that the court disagrees with my recommendation that the motion to dismiss the indictment be denied, I recommend that the dismissal be without prejudice. The Act provides the following guidance:

> If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped. In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

18 U.S.C. § 3162(a)(1). The defendant contends that this is a case involving a charge of relatively "low seriousness;" that his efforts to get Vos and this court to listen to him, as related in his testimony, weigh in favor of dismissal with prejudice; that failure to reprosecute this case would not damage the justice system; and that he has been prejudiced by the passage of over a year since he was charged, severely hampering his ability to present a defense at trial.

The defendant offered no specifics to support his assertion that his ability to present a defense in this case has been hampered by the passage of time, and, in the absence of such support, I will not credit his conclusory assertion on this point. I reject his claim that what is in essence a charge of aggravated identity theft is a crime of "low seriousness," as well as his assertion that failure to prosecute such a charge will not damage the criminal justice system. To

the contrary, crimes of this nature are of particular interest to the public at this time, and a failure to prosecute such a case can only raise questions about the efficacy and integrity of the criminal justice system. Finally, the defendant's testimony about his efforts to invoke his rights under the Speedy Trial Act, after it became clear that the prosecutors in New York would not drop the escape charge,[5] do demonstrate a reason for his frustration, but, given their timing and their nature, do not rise to the level of justifying dismissal with prejudice.

### C. Dismissal of Different Charges

In the event that the court decides that dismissal with prejudice is the appropriate sanction in this case, one final point must be considered. Dismissal is only appropriate for the charge in the complaint, and not for any different charges that appear in the indictment but not in the complaint. *United States v. Napolitano*, 761 F.2d 135, 137-38 (2d Cir. 1985). *United States v. Peppin*, 365 F.Supp.2d 261 (N.D.N.Y. 2005), cited by counsel for the defendant in oral argument, does not require a different outcome, if I were to find its analysis persuasive. In that case, the government admitted that it was "entirely responsible" for a 15-month delay between the defendant's arrest and indictment, and the court found that the government's "overlooking" of the defendant for that period of time was "willful negligence." *Id*. at 263, 265-67. In the case at hand, the government never "overlooked" the defendant's presence in the Cumberland County Jail. Rather, it indulged the efforts of defense counsel to reach a plea bargain that would include the charge then pending in New York. To the extent that the charges in the indictment may reasonably be characterized as different from the charge in the complaint, whether or not they arise from the same conduct as the charge in the complaint, they should not be dismissed.

---

[5] The defendant's first mention of his right to a speedy trial is in his letter dated March 21, 2007. Defendant's Exh. 15. The defendant left Maine to return to New York on February 22, 2007.

### III. Conclusion

For the foregoing reasons, I recommend that the recommended findings of fact be adopted and the defendant's motion to dismiss the indictment be **DENIED.**

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 30th day of December, 2008.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge