UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| HOWARD KELLY | ) | |
|---|---|---|
| Movant, | ) | |
| v. | ) | 2:07-cr-00123-DBH-1 |
| | ) | 2:12-cv-00365-DBH |
| UNITED STATES OF AMERICA, | ) | |
| Respondent | ) | |

# **RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

Howard Dennis Kelly filed a motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. (Motion, ECF No. 139.) He later filed a motion to amend, and after that a motion to withdraw the section 2255 motion. (ECF Nos. 154, 167.) Kelly filed the motion to withdraw after the merits of his habeas claims were fully briefed. After the government filed its response to his motion to withdraw, I issued an order stating that "[i]f petitioner fails to reply and show cause why the dismissal should not be made on the merits of the petition, the petition will be dismissed with prejudice and any subsequent attempt by Kelly to obtain habeas type relief regarding this conviction will be subject to the gatekeeping requirements for second or successive petitions." (ECF No. 169.)

This recommended decision addresses both the motion to withdraw and the merits of the section 2255 motion. I recommend that the court deny Kelly's motion to withdraw his section 2255 petition. As to the merits of his section 2255 motion, I recommend that the court (1) dismiss with prejudice Kelly's claims concerning restitution; (2) dismiss without prejudice his claim, pursuant to Fed. R. Crim. P. 41(g), for the return of personal property that is not subject to

restitution; (3) dismiss with prejudice his claim of actual innocence; (4) deny with prejudice his claims that are based on the allegation that he was deprived of medical services and anti-seizure medicine prior to his plea hearing and the sentencing hearing.

## Facts and Procedural History

The pertinent facts and procedural history are set forth in detail in United States v. Kelly, 661 F.3d 682 (1st Cir. 2011). I summarize the facts set forth there and augment them where necessary to address the pending issues.

In May 2006, a two-count complaint was filed in this court against Kelly for identity theft and aggravated identity theft. Id. at 683. He and a co-conspirator had established accounts at numerous banks using false identifications and then negotiated checks on insufficient funds. They also negotiated counterfeit payroll checks. (Fed. R. Crim. P. 11 Hearing Tr. at 6, 11-13, ECF No. 121; Prosecution Version, ECF No. 95.)

At the time the complaint in federal court in Maine was filed, Kelly was in federal custody in New York on an unrelated 2005 complaint, filed in the Western District of New York, charging him with unlawful escape from a halfway house in that district. Kelly, 661 F.3d at 683. After Kelly escaped, he was arrested in New Hampshire and taken to New York where the case proceeded over the summer of 2006. Id. at 683-84.

Meanwhile, this court granted a writ of habeas corpus ad prosequendum to secure Kelly's presence in court in Maine in October 2006. Id. at 684. Kelly remained in Maine until February 2007, when he was transported back to New York. He was in New York when he was indicted on the Maine charges in December 2007. Those charges included eight counts, for conspiracy (count 1), bank fraud (counts 2-4), mail fraud (counts 5-7), and aggravated identity theft (count 8). (Indictment, ECF No. 36.)

Kelly moved unsuccessfully to dismiss the Maine indictment due to violations of the Speedy Trial Act, 18 U.S.C. §§ 3161, 3162. In May 2009, he entered a conditional guilty plea, reserving the right to seek appellate review of the denial of his motion to dismiss. (Conditional Plea, ECF No. 96.) He was convicted and sentenced to 70 months of imprisonment, comprised of 46 months on each of counts one through seven, to be served concurrently, and 24 months on count eight, to be served consecutively to the sentence on counts one through seven. (Judgment, ECF No. 115.) The Maine terms of imprisonment were to run consecutively to the sentence in the Western District of New York, No. 6:06-cr-6077-DGL-MWP. (Sentencing Tr. at 49.) The Maine sentence included a term of three years of supervised release on count one, five years on each of counts two through seven, and one year on count eight, all to be served concurrently with one another. It also included a total of $54,125.30 in restitution to listed victims and an assessment of $100.00 on each of the eight counts, for a total of $54,925.30.

Kelly lost his appeal of the denial of his Speedy Trial Act claim. The First Circuit affirmed, holding that Kelly's appearance in court in Maine under a writ of habeas corpus <u>ad prosequendum</u> does not constitute an "arrest" or "summons" under the Speedy Trial Act and therefore does not trigger the statute's 30-day time limit from arrest to indictment. <u>Kelly</u>, 661 F.3d at 687-89. In April 2012, the United States Supreme Court denied Kelly's petition for a writ of certiorari. <u>Kelly v. United States</u>, 132 S. Ct. 2116 (2012).

Kelly filed a timely motion pursuant to 28 U.S.C. § 2255 in November 2012. At the same time, he filed a motion requesting that Judge Hornby and I recuse ourselves. (ECF No. 140.) We each denied the motion, finding that there was no basis for recusal. (ECF Nos. 141, 143.) Kelly's initial section 2255 motion asserted four grounds. Ground one asserted that Kelly was entitled to credit for time served on the New York sentence. Ground two asserted that the

amount of restitution was inflated and requested the return of certain personal property. Ground three alleged that Kelly was denied anti-seizure medications while he was in jail in New Hampshire, resulting in seizures that rendered him incompetent in the courtroom during various hearings, including sentencing, and resulting in Eighth Amendment violations while he was detained before sentencing. He asserted ineffective assistance of counsel as an excuse for his failure to pursue this issue on direct appeal of the conviction or sentence. Ground four was for violations of the Speedy Trial Act.

      I issued an order to the government to answer. (ECF No. 142.) The government argued that the claims were not cognizable, procedurally barred, affirmatively waived, or meritless, and it requested dismissal. (ECF No. 153.)

      On the same day that the government answered, Kelly filed a motion for leave to amend his section 2255 motion and attached his amended motion. (ECF Nos. 154, 154-1.) I found that the motion to amend was not timely filed, but I permitted Kelly to file a reply articulating what new claim he sought to assert in his motion to amend and said I would reconsider the motion to amend and require the government to further respond if necessary. (ECF No. 155.)

      Kelly responded by filing a motion for reconsideration of his motion to amend. (ECF No. 160.) In that motion, Kelly voluntarily withdrew his claims regarding the concurrent sentence, speedy trial violations, and any claim that counsel was ineffective for failing to request a variance under the sentencing guidelines. (Motion for Reconsideration at 6-7.) Kelly also asserted three additional grounds for his section 2255 motion. Ground one asserts that the court committed plain error by failing to specify a schedule for his restitution payments. Ground two reiterates the argument made in his initial motion that the amount of restitution was inflated.

Kelly asserts ineffective assistance of counsel as to both the amount of restitution and the payment schedule. (Motion for Reconsideration at 7.)

Ground three of his motion for reconsideration asserts that Kelly's sentence in this court should be revisited based on his claim of actual innocence of the crime of escape, a claim he is pursuing in a habeas action filed in the Western District of New York. According to the August 2012 decision and order on his section 2255 motion in that case, he was convicted following a three-day jury trial and sentenced to a term of imprisonment of 54 months. United States v. Kelly, No. 6:06-cr-06077-DGL-MWP (W.D. N.Y. Aug. 1, 2012), Decision and Order at 1-2, ECF No. 141. He had previously filed a direct appeal of his underlying conviction, and the Second Circuit Court of Appeals affirmed the conviction in a summary order. United States v. Kelly, 368 F. App'x 194 (2d Cir.), cert. denied, --- U.S. ---, 131 S. Ct. 349 (2010).

The Western District of New York subsequently rejected his habeas claim of actual innocence for lack of merit. Kelly, No. 6:06-cr-06077-DGL-MWP, Decision and Order at 1-2. The court also found that Kelly's claim of ineffective assistance lacked merit, and the "exceptionally strong and forceful nature" of the government's case against him precluded any finding of prejudice. Id. at 3. The Second Circuit Court of Appeals dismissed Kelly's motion for a certificate of appealability for lack of jurisdiction because Kelly failed to show evidence that he submitted a timely notice of appeal to prison officials for mailing. United States v. Kelly, No. 13-469 (2d Cir. Oct. 2, 2013), ECF No. 47. On October 16, 2013, the Second Circuit entered on the docket its receipt of mail that appears to have been addressed to Kelly and returned to the Second Circuit as undeliverable. Kelly, No. 13-469, ECF No. 48. On October 30, 2013, Justice Ginsburg granted Kelly an extension to January 2, 2014, to file a petition in the Supreme Court for a writ of certiorari. Kelly, No. 13-469, ECF No. 49.

In Kelly's motion for reconsideration filed in this court, he argues that he was actually innocent, not because he did not commit the crime of escape, but rather because he should have been prosecuted for it in New Jersey, where he started the authorized unescorted trip from prison, rather than in New York, which is where he was supposed to conclude that trip by reporting to a halfway house.

I granted Kelly leave to amend his petition to add only the grounds stated in his motion for reconsideration, with no further amendments allowed. (ECF No. 161.) Thus, the following are the claims remaining: (1) a claim to reduce the amount of restitution and determine a payment schedule for restitution; (2) a claim for the return of certain personal property; (3) a claim for resentencing on the Maine convictions once the claim of actual innocence of the New York escape charge is fully adjudicated; and (4) multiple claims based on an alleged denial of medical care and anti-seizure medications prior to the sentencing hearing and other hearings.

In accordance with my order, the government filed a supplemental response to Kelly's section 2255 motion as amended, addressing the new claims set forth in Kelly's motion for reconsideration and requesting dismissal without an evidentiary hearing. (ECF No. 166.)

Kelly then filed a motion to withdraw his section 2255 claims. (ECF No. 167.) The government responded, and I entered an order warning Kelly that if he failed to reply and show cause why the dismissal should not be made on the merits, the motion would be dismissed with prejudice and any subsequent attempt for habeas relief would be subject to the gatekeeping requirements for second or successive petitions. (ECF Nos. 168, 169.)

Kelly's reply asserts that he filed the motion to withdraw because the government had argued that any issues concerning restitution must await Kelly's release from prison. Kelly argues that if the restitution issues must await his release, he may as well withdraw the section

2255 motion. (Reply at 2, ECF No. 172.) He then provides argument on the issue of the amount of restitution, which he describes as his "only [g]round." I understand this to mean that the restitution argument is the only basis he asserts for his motion to withdraw, not that it is the only remaining ground for his section 2255 claim or that he has waived his other claims. (Reply at 2.) He argues that the restitution amount should be lowered from $88,963.60 to $51,137.67 to reflect the value of the cash and property recovered by the government, and it should be reduced by an additional $35,793.65, because that reflected an erroneous award to victims in Pennsylvania, i.e., victims outside Maine. Kelly argues that the final corrected total amount of restitution should be $15,344.02. (Reply at 4-5.) Kelly argues that counsel was ineffective for failing to object to the addition of the Pennsylvania victims' losses to the amount of restitution. (Reply at 5.)

**Legal Standards**

A person may move to vacate his sentence on four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; and (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); see Knight v. United States, 37 F.3d 769, 772 (1st Cir. 1994). Although the fourth category is "rather general," it is only implicated "if the claimed error is 'a fundamental defect which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure.'" Knight, 37 F.3d at 772 (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).

The burden is on the section 2255 movant to establish by a preponderance of the evidence that he or she is entitled to section 2255 relief. David v. United States, 134 F.3d 470, 474 (1st Cir. 1998); United States v. DiCarlo, 575 F.2d 952, 954 (1st Cir. 1978).

> Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. An evidentiary hearing "is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case."

Moreno-Morales v. United States, 334 F.3d 140, 145 (1st Cir. 2003) (citation omitted) (quoting DiCarlo, 575 F.2d at 954 (quotation marks omitted)).

A habeas petition is not a substitute for an appeal. Berthoff v. United States, 308 F.3d 124, 127 (1st Cir. 2002). "Accordingly, a defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence." Id. at 127-28. An allegation of ineffective assistance of counsel can excuse a procedural default, but only if the movant shows that counsel's representation fell below an objective standard of reasonableness and prejudiced the movant's defense. Owens v. United States, 483 F.3d 48, 63 (1st Cir. 2007).

## Discussion

**1. Motion to Withdraw the Section 2255 Motion**

Kelly's single-paragraph motion to withdraw the section 2255 motion states only that he is "in agreement with the case law that the Government submitted." (Motion to Withdraw, ECF No. 167.) I warned him that if he failed to show cause why the dismissal should not be on the merits, the motion would be dismissed with prejudice. (ECF No. 169.) In his reply, he states that if the government is correct that he must await release from prison to address the restitution

8

issues, he may as well withdraw his section 2255 motion. (Reply at 2, ECF No. 172.) He then goes on to argue the substance of his restitution and actual innocence claims.

"'[A] prisoner is entitled to one, but only one, full and fair opportunity to wage a collateral attack.'" United States v. Barrett, 178 F.3d 34, 44 (1st Cir. 1999) (quoting O'Connor v. United States, 133 F.3d 548, 550 (7th Cir. 1998)). "[A] petition withdrawn or dismissed for want of prosecution may be counted as an initial petition if the petitioner gave up when things looked hopeless." O'Connor, 133 F.3d at 550. I do not believe Kelly intended to waive his arguments relating to restitution and actual innocence, because he continues to press them in his reply. For this reason, I conclude that a decision on the merits of his arguments is warranted.

### 2. Restitution Claims

Kelly contests the amount imposed in restitution and claims ineffective assistance of counsel on this issue. (Reply at 3-5, ECF No. 172.) He argues in his initial motion that the $54,125.30 imposed was inflated because it did not take into account the money the government recovered or that the goods the government recovered were in pristine condition, complete with sales receipts and original packaging. (Motion at 9.) Kelly also asserts that the government did not provide an inventory of the goods recovered. (Motion at 17.) He claims that the actual loss was in the range of $15,000 to $20,000, rather than the over $54,000 imposed, and that if he and his co-conspirator are each individually liable for over $54,000 in restitution, the combined amount exceeds the actual loss by more than $20,000. (Motion at 9-10.) He asserts that some of the victims' losses were double-counted by the government. (Motion for Reconsideration at 7.) He also asks that he not be held liable for somewhere between $12,000 and $15,000 from Maine banks that his co-conspirator spent on her medical bills. (Motion at 12, 18.)

9

Kelly asserts in his initial section 2255 motion that he has made numerous attempts to address this issue with the court, to no avail. (Motion at 10.) He argues that the court failed to consider that he is unable to pay restitution. He asserts that he has no assets and very little income, and he is unemployable because he has been incarcerated in federal prisons since 1995 except for one brief period from October 2005 to May 2006. He describes himself as elderly and disabled. (Motion at 13.) Kelly did, however, attach some letters to his motion for reconsideration that indicate he was due to receive several thousand dollars from an estate. (Letters, ECF Nos. 160-7, 160-10, 160-11.)

As to the claim that the amount of restitution is in error, the government acknowledges that there is a discrepancy between the total cash seizures and the amount listed on the revised presentence investigation report. (Government's Supplemental Response at 5, ECF No. 166.) It asserts that there is a difference of $556.40 between the total cash seizures and the amount that was listed on the report as having been provided to bank victims. The government states that "it appears that the probation officer might have inadvertently interchanged or commingled money from the sale of the camper with some of the cash seized where the [revised presentence investigation report] sets forth its breakdown of the total assets seized . . . ." The government asserts that cash from an inventory search of the camper and a day planner was accounted for and included in amounts provided to victims, and the amount Kelly had requested for his camper reflected the price he paid for it rather than its later sale value. (Government's Supplemental Response at 5-6.)

As to the claim concerning the payment schedule, Kelly argues that the court erred by failing to set such a schedule while he is in prison and by improperly delegating this task to the Bureau of Prisons. (Motion for Reconsideration at 6, ECF No. 160.) The judgment provides that

a lump sum payment of $54,925.30, which includes both the restitution amount and the $800 in assessments, was due immediately, and "[a]ny amount that the defendant is unable to pay now is due and payable during the term of incarceration." (Judgment at 8, ECF No. 115.) Upon Kelly's release, any remaining balance would be due in monthly installments during the period of supervised release, with the amount to be initially determined by the supervising officer but subject to review by the sentencing judge upon the request of either Kelly or the government. (Judgment at 8.)

The court denied Kelly's motion to suspend all payments until release from custody, noting that the issues he raised about his ability to pay are for the Bureau of Prisons to resolve. (Order, ECF No. 125.) Kelly states that he did not appeal from that decision. (Amended Motion at 4-5, ECF No. 154-1.) He argues that he received ineffective assistance on the issue of payments due while he is in prison. (Motion for Reconsideration at 7, ECF No. 160.)

I have not attempted to evaluate the figures that comprise the restitution amount or otherwise assess Kelly's arguments concerning the restitution payment schedule or his related claim of ineffective assistance concerning restitution. Restitution claims are not cognizable in actions for habeas relief under section 2255. "By its terms, § 2255 applies only to petitioners 'in custody' who 'claim[] the right to be released'; it does not provide relief to those 'merely claiming the right to a reduced restitution order.'" United States v. Chorney, 453 F. App'x 4, 8 (1st Cir. 2011) (unpublished) (quoting Smullen v. United States, 94 F.3d 20, 25 (1st Cir. 1996)); see also Rodriquez v. United States, 132 F.3d 30 (1st Cir. 1997) (unpublished). In Smullen, the First Circuit held that section 2255 does not permit a petitioner to challenge a restitution order through a claim of ineffective assistance of counsel. 94 F.3d at 26. Kelly defaulted on the claims concerning the amount and the payment schedule because he failed to raise these issues at

11

sentencing or on direct appeal. At sentencing, Kelly himself confirmed that he did not dispute the facts as described in the revised presentence investigation report, and counsel also confirmed that $54,125.30 was the correct restitution amount. (Sentencing Tr. at 10, 45, ECF No. 119.)

I recommend that the court dismiss with prejudice the claims concerning the amount of restitution, the payment schedule, and ineffective assistance of counsel concerning restitution.

### 3. Return of Personal Property

Kelly asks that certain seized personal property consisting of clothing and "personal family property such as family photos of deceased relatives and spouses & children," be returned. (Motion at 8.) See United States v. Allison, 165 F.3d 20 (4th Cir. 1998) (unpublished) (dismissing a forfeiture claim brought in the context of a section 2255 motion). Claims for the return of personal property are not cognizable in a section 2255 motion. I note that Kelly cited to Rule 41(g) in his initial section 2255 motion. I recommend dismissal without prejudice of Kelly's claim for the return of his personal property so that, if he wishes to do so, he may file a separate motion pursuant to Fed. R. Crim. P. 41(g) to seek the return of that property. However, Kelly would not be entitled to pursue a claim pursuant to Rule 41(g) for property that he lost as part of the restitution awarded in this case.

### 4. Claim of Actual Innocence in the New York Case

In ground three, Kelly asserts actual innocence of his prior federal conviction in the Western District of New York for escape. (Motion for Reconsideration at 8-9.) This court has no jurisdiction to consider the merits of Kelly's habeas claim in that case. Pursuant to section 2255(a), jurisdiction over habeas claims is in the court that imposed the sentence, which in that case is the Western District of New York. Kelly's habeas case in the Western District is still pending because he has been granted an extension to January 2014 to file a petition for a writ of

certiorari. There is no basis for his claim in this court. I recommend that the court dismiss this claim with prejudice, such that if Kelly were eventually successful in his Western District of New York habeas claim and sought habeas relief in this court on the basis of a "new" factual predicate forming the basis for a claim that he should be resentenced in this court, he would be subject to the gatekeeping requirements of section 2255(h).

   5. **Denial of Medications and Medical Services**

Kelly asserted in his initial section 2255 motion that he was deprived of medical services and medications, particularly anti-seizure medications, over a twenty-one month period while he was incarcerated in New Hampshire. (Motion at 29.) He also asserts an ineffective assistance claim over this issue. These claims may have survived Kelly's unsuccessful attempt to amend his petition and may not have been abandoned by Kelly in his subsequent pleadings. He originally alleged that this denial of medical services resulted in falls and injuries and amounted to an Eighth Amendment violation. He also alleged that he suffered from multiple seizures in the courtroom "during hearings and at sentencing," and that these seizures rendered him unable to participate in a meaningful way in his defense at the proceedings. (Motion at 38.) Kelly complained that the court recommended rather than ordered him to be incarcerated at Fort Devens Massachusetts Medical Facility, and this decision reflected bias. (Motion at 38.) Kelly also asserted a claim of ineffective assistance of counsel for failure to press for a reduced sentence based on his physical disabilities, but he later explicitly waived this claim. (Motion at 29-30; Motion for Reconsideration at 7.)

Kelly does not challenge his current prison conditions, and, in any event, a claim concerning prison conditions may not be brought pursuant to section 2255. See Rogers v. United States, 180 F.3d 349, 357 n.15 (1st Cir. 1999) ("When an action addresses the execution of a

13

sentence by prison or administrative officials, rather than the validity of the sentence, § 2255 relief is unavailable.")  A claim for inadequate medical care relates to the execution of a sentence, rather than its validity, and therefore such a claim must be brought, if at all, under 28 U.S.C. § 2241.  Barrett, 178 F.3d at 50 n.10.

Likewise, there is no basis for any claim concerning where the Bureau of Prisons placed Kelly.  Under 18 U.S.C. §3621(b), "[t]he Bureau of Prisons shall designate the place of the prisoner's imprisonment."  "Under § 3621(b), the BOP has discretionary authority to designate any available penal or correctional facility that meets minimum standards of health and habitability as the place of a prisoner's imprisonment, and to transfer a prisoner at any time to such a facility."  Goldings v. Winn, 383 F.3d 17, 28 (1st Cir. 2004).  Furthermore, Kelly received what he requested.  At sentencing, Kelly said to the court, reading from his prepared statement, "should you decide to return me to prison, I request you recommend the Bureau of Prisons designate me and place me in a hospital facility at Fort Devens, Massachusetts, based upon my medical records provided to this Court by the federal Bureau of Prisons."  (Sentencing Tr. at 35, ECF No. 119.)  The court did recommend Fort Devens, "in light of [Kelly's] physical needs and if not Devens, the Court recommends some other medical facility that can deal with his physical needs."  (Judgment at 3, ECF No. 115.)

This leaves only the claims based on the allegation that Kelly suffered from multiple seizure episodes and was unable to participate meaningfully in his defense at court hearings because he was deprived of medical services and anti-seizure medications.  There is no factual basis for this allegation in the record of either the Rule 11 hearing or the sentencing hearing.  At his Rule 11 hearing, Kelly told the court that he was seeing doctors for seizures, high blood pressure, and venous insufficiency in his legs.  However, he also told the court that the only

medicine he was on was "high blood pressure medication, aspirin, Motrin," which he was taking in the amount prescribed by jail physicians. (Rule 11 Tr. at 3, ECF No. 121.) When asked whether the medicine prevented him from understanding what was happening, he replied that it did not. When the court asked him, "[d]o you feel you do understand what's happening in these proceedings?" Kelly responded, "Yes, I understand." (Rule 11 Tr. at 3-4.) The court found after observing Kelly throughout the proceedings that his plea was made voluntarily and with knowledge. (Rule 11 Tr. at 15-16.)

Kelly's revised presentence investigation report states that "[h]e denied any current mental health problems and he is not taking any medication for the same." At the sentencing hearing, he told the court he was on Motrin and another pill for high blood pressure, which he was taking in the prescribed amounts. (Sentencing Tr. at 9-10, ECF No. 119.) When asked whether these medications, "either alone or in combination, prevent you from understanding what's happening here this morning?" he answered, "No, they don't." (Sentencing Tr. at 9-10.) Kelly's statements at both the Rule 11 hearing and sentencing unequivocally state that he understood the proceedings and he did not say anything about being deprived of medications. His section 2255 claim concerning his medical treatment and medications is contradicted by the record, and therefore he is not entitled to an evidentiary hearing in support of his section 2255 motion. See Owens, 483 F.3d at 57. I recommend that the court deny with prejudice the claims that are based on an alleged denial of medical services and deprivation of anti-seizure medications, including the associated ineffective assistance claim.

**Conclusion**

For the reasons stated above, I conclude that no evidentiary hearing is warranted under Rule 8 of the Rules Governing Section 2255 Cases. I recommend that the court deny Kelly's

15

motion to withdraw his section 2255 petition.  As to the merits of Kelly's section 2255 motion, I recommend that the court

(a) dismiss with prejudice Kelly's claims concerning restitution;

(b) dismiss without prejudice his claim, pursuant to Fed. Crim. R. 41(g), for the return of personal property that is not subject to restitution;

(c) dismiss with prejudice his claim of actual innocence; and

(d) deny with prejudice his claims that are based on the allegation that he could not participate meaningfully in hearings due to deprivation of medical services and medications.

Finally, I recommend that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

November 27, 2013